The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioners Opinion and Award and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers Compensation Act.
2. The carrier on the risk at the time of plaintiffs alleged injury was Liberty Mutual Insurance Company.
3. The parties estimate that plaintiffs average weekly wage was $528.00, yielding a compensation rate of $351.99.
***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and enters the following:
 FINDINGS OF FACT
1. Plaintiff is a male with a tenth grade education who was sixty-two years of age on the date of the hearing before the Deputy Commissioner. Plaintiff has been a truck driver since 1974, has worked for defendant-employer continually since 1989, with the exception of approximately six months in 1990. Plaintiff and his wife worked as a truck driving team, making long distance trips to other states.
2. In September and October 1991, plaintiff drove a series of cross-country routes from North Carolina through the southwestern United States and into southern California. During the course of these trips, plaintiff and his wife made several stops in the southwest to have cargo unloaded by others, refuel, take meals, and rest. Upon arrival in California, plaintiff picked up loads and returned through the southwestern states to North Carolina.
3. During an October 1991 trip, plaintiff began feeling ill. When he returned to North Carolina, plaintiffs condition worsened and he experienced flu-like symptoms consisting of chills, fever, cough and fatigue. On 31 October 1991, plaintiff presented to his family physician, Dr. Edward Lesesne, Jr.
4. Chest x-rays showed an infiltrate in plaintiffs right upper lobe. Plaintiff was started on a course of Erythromycin, but when his symptoms continued to worsen, he was hospitalized for intensive evaluation and treatment around 11 November 1991.
5. Dr. Lesesne referred plaintiff to Dr. Harry Lipham, a pulmonary specialist. A biopsy performed on a lymph node removed from plaintiffs chest showed the presence of a coccidioidomycosis fungus organism. This organism lives in the soil and sand found in the southwestern United States, including Arizona, New Mexico, and southern California. It does not grow in North Carolina or in any state east of the Mississippi River. The organism can become airborne and inhaled, leading to infection in humans.
6. Plaintiff has also been evaluated by and continues under the treatment of Dr. Ronald G. Washburn, a specialist in infectious diseases and internal medicine at Bowman-Gray School of Medicine. Dr. Washburn confirmed that plaintiff has contracted coccidioidomycosis.
7. Plaintiff contracted coccidioidomycosis due to exposure to the organism which causes the disease while traveling in the southwestern United States. It is most likely that plaintiff inhaled the organism while in the course of his truck driving for defendant-employer. Plaintiff faced no real risk of exposure to this disease in North Carolina.
8. Approximately sixty percent of the persons exposed to the coccidioidomycosis fungus are asymptomatic. Of those who are exposed, about forty percent develop initial flu-like symptoms with spontaneous resolution. Only about five percent of those persons thereafter develop a more chronic form of the disease, and only one-half of one percent of the population exposed to the organism develops the disseminated disease.
9. Plaintiffs disease became disseminated and has become chronic. Although the disease is in a suppressed state, it is still present and plaintiff will need to continue to take medication and have periodic testing and monitoring of his condition for the remainder of his life.
10. Plaintiffs work as a truck driver, which required him to travel to an area of the country where he could be exposed to the coccidioidomycosis fungus, placed him at an increased risk of contracting the disease when compared to the general public not so employed.
11. As a result of his occupational disease, plaintiff was unable to work from 29 October 1991 to 6 April 1992, and from 19 June 1992 to 14 October 1992.
12. During plaintiffs periods of incapacity, his wife provided in home care services for approximately eight hours per day which afforded plaintiff relief from his occupational disease.
13. Since his return to work, plaintiff has earned approximately two-thirds his pre-injury average weekly wage. Plaintiffs inability to earn his pre-injury wage is due to his need to have monthly medical attention and his desire, based upon medical advice, to avoid travelling to areas where he would be re-exposed to the fungus.
14. The parties have stipulated to an average weekly wage of $528.00, yielding a compensation rate of $351.99. This amount was subject to the receipt of new evidence which would warrant the alteration of the stipulated amount. The undersigned find no new compelling evidence sufficient to support a deviation from the average weekly wage agreed upon by the parties.
15. Although plaintiff has suffered infections in various organs, the injuries are controlled by medication. Accordingly, there is insufficient medical evidence to support a finding that plaintiff has suffered any permanent loss or damage to any important external or internal organ or part of the body.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff has sustained an occupational disease within the meaning of the Workers Compensation Act. Plaintiff contracted the disease of coccidioidomycosis due to exposure to fungus spores in the southwestern United States while traveling in the course of his employment with defendant-employer. N.C. Gen. Stat. 97-53(13).
2. In determining whether plaintiffs occupation placed him at an increased risk over that of the general public of contracting a disease, it need not be shown that the disease originates exclusively from the occupation in question. Rather, it must be demonstrated that the conditions of the employment resulted in a hazard which is not present in employment generally. Booker v.Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189 (1979). In this case, but for the employment-related requirement of travelling through an area where he was exposed to the fungus, plaintiff would not have contracted the disease. Members of the general public who do not face a like requirement in their occupations are not subject to the same risk; therefore, plaintiff faced an increased risk of contracting coccidioidomycosis than that of the general public in North Carolina.
3. Proof of a causal connection between a disease and an employees occupation may consist of the following: (1) the extent of exposure to the disease or disease-causing agents during employment, (2) the extent of exposure outside employment, and (3) absence of the disease prior to the work-related exposure as shown by the employees medical history. Id. In the instant case, plaintiffs sole avenue of exposure came while driving through the infested area of the southwest as required by his employment. Persons whose employment does not require them to travel to the infested areas of the country are not so exposed. Accordingly, there is essentially no exposure to the general public as a result of their jobs outside of such employment. Lastly, there is no history of the disease in plaintiffs medical records prior to the work-related exposure. For these reasons, the causal connection between plaintiffs employment and the disease has been adequately established, and plaintiff is entitled to compensation under the Act.
4. Plaintiff is entitled to temporary total disability compensation from 29 October 1991 to 6 April 1992, and from 19 June 1992 to 14 October 1992. N.C. Gen. Stat. 97-29.
5. Plaintiff is entitled to attendant care benefits for the time which his wife spent caring for and/or assisting him while he was incapacitated, herein determined to be eight hours per day. There is no evidence of record as to the average hourly cost of obtaining like professional services in the community where plaintiff resides. N.C. Gen. Stat. 97-25.
6. Plaintiff is entitled to temporary partial disability benefits for the difference between his pre-injury earnings and his current earnings for those periods during which he worked but not to exceed 300 weeks from 29 October 1991, the date his disability began. N.C. Gen. Stat. 97-30.
7. Because there is insufficient medical evidence presented thus far to support a finding of any permanent loss or damage to any important external or internal organ or part of the body, plaintiff is not entitled to compensation pursuant to N.C. Gen. Stat. 97-31(24) at this time; however this issue is reserved for review upon further evidence.
8. Plaintiff is entitled to continuing medical care at defendants expense for ongoing treatment necessary to effect a cure, give relief, or lessen the period of disability resulting from his occupational disease. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation in the amount of $351.99 per week for the period between 29 October 1991 to 6 April 1992, and from 19 June 1992 to 14 October 1992. This award shall be paid in a lump sum, subject to attorneys fees as discussed below.
2. Defendants shall pay to plaintiff temporary partial disability compensation pursuant to N.C. Gen. Stat. 97-30 for the period following his return to work during which he earned less than his pre-injury wages, not to exceed 300 weeks from the date of injury. To the extent that this award has already accrued, plaintiff shall be paid that amount in a lump sum, subject to attorneys fees as discussed below.
3. Defendants shall pay to plaintiff an amount equal to the average hourly cost of obtaining professional in home care services in the community where plaintiff resides, for eight hours per day for the periods between 29 October 1991 to 6 April 1992, and from 19 June 1992 to 14 October 1992. If the parties are unable to agree upon this amount, the Full Commission will enter an Order resolving the issue upon submission of additional evidence.
4. Defendants shall pay to plaintiff all costs attendant to ongoing medical care and treatment necessary to effect a cure, give relief, or lessen the period of disability resulting from his occupational disease until further order of the Commission.
5. Plaintiffs counsel is entitled to a reasonable attorneys fee of twenty-five percent of the compensation awarded in Paragraphs 1 and 2 above. Accordingly, one fourth of all lump sum awards shall be paid directly to plaintiffs counsel. To the extent that plaintiff is eligible to receive continuing weekly payments under Paragraph 2 of this award, every fourth payment shall be paid directly to plaintiffs counsel.
6. Defendants shall bear the costs of this action.
This is the of November, 1999.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
(Retired prior to decision)
S/_________________ J. HOWARD BUNN, JR. CHAIRMAN
LKM:jbd